## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW JERSEY

| | |
|---|---|
| INSTITUITIONAL    INVESTORS, LLC :<br><br>Plaintiffs :<br><br>v. :<br><br>JENNIFER    CONNOLLY    PUBLIC RELATIONS,    LTD,    AND JENNIFER CONNELLY :<br><br>Defendants | **Civil Action**<br><br>CIVIL ACTION.:   13 CIV 4111 |

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDERAL RULE 12(B)(6)

---

**Trimboli & Prusinowski, LLC**
268 South Street
Morristown, NJ 07960
973-660-1095
973-349-1307 (fax)
jprusinowski@trimprulaw.com

James T. Prusinowski, Esq.
    Of Counsel and On the Brief

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ..................................................................... 2

STANDARD OF REVIEW ..................................................................... 5

LEGAL ARGUMENTS ......................................................................... 7

   POINT I ............................................................................ 7

     COUNT ONE OF PLAINTIFF'S AMENDED COMPLAINT
     FAILS TO ESTABLISH THAT ANY ACTION TAKEN BY
     THESE DEFENDANTS WAS IN VIOLATION OF THE
     COPYRIGHT AND COMPUTER FRAUD AND ABUSE ACT ............................ 7

   POINT II .......................................................................... 10

     COUNT TWO MUST BE DISMISSED AS PLAINTIFF LACKS
     STANDING ..................................................................... 10

   POINT III ......................................................................... 13

     PLAINTIFF HAS NOT ESTABLISHED ANY FACTS THAT
     WOULD SUPPORT A CLAIM OF VIOLATING THE
     ELECTRONIC PRIVACY ACT ..................................................... 13

   POINT IV .......................................................................... 15

     PLAINTIFF CANNOT MAKE OUT A CLAIM UNDER
     SECTION 1201 OF THE DIGITAL MILLENNIUM
     COPYRIGHT ACT ............................................................... 15

   POINT V ........................................................................... 18

     PLAINTIFF DID NOT PLEAD ITS ALLEGATIONS OF
     FRAUD WITH SPECIFICITY AS REQUIRED BY RULE
     9(b) .......................................................................... 18

   POINT VI .......................................................................... 20

     COUNT SIX, MISAPPROPRIATION OF TRADE SECRETS,
     SHOULD BE DISMISSED FOR FAILURE TO STATE A
     CLAIM. ....................................................................... 20

POINT VII ..................................................................................................... 22

   PLAINTIFF CANNOT ARTICULATE ANY ACTION AGAINST
   DEFNEDANT JENNIFER CONNELLY AS IT HAS NOT
   PIERCED THE CORPORATE VEIL ............................................................. 22

CONCLUSION ............................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108
(2d Cir. 2012)...................................................22

Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ....................5

Associated Press v. Meltwater U.S. Holdings, Inc., 12 CIV. 1087
DLC, 2013 WL 1153979 (S.D.N.Y. Mar. 21, 2013)................9

Bell Atl. Corp., 550 U.S. 544 (2007) ..........................5

Butera & Andrews v. IBM, 456 F. Supp. 2d 104, 110 (D.D.C. 2006)
...............................................................16

Butera, at 112 ................................................17

Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 250 (S.D.N.Y.
2000)..........................................................8

Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121,
127 (2d Cir. 2008)(...........................................10

Chamberlain Grp., Inc. v. Skylink Technologies, Inc., 381 F.3d
1178 (Fed. Cir. 2004)........................................19

Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693,
717 (2d Cir. 1992)...........................................25

Computer Assocs., 982 F.2d at 717 ............................25

Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 536-37 (S.D.N.Y.
2007)..........................................................9

I.M.S. Inquiry Mgmt. Sys., Ltd, supra, 307 F. Supp. 2d at 532 .20

I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.,
307 F.Supp.2d 521, 532-33 (S.D.N.Y. 2004)...................20

In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) 7

Iqbal, 129 S. Ct. at 677 ......................................6

Iqbal, 556 U.S. at 667 ........................................5

Iqdbal, at 679 ................................................7

Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)
...............................................................22

N. Atl. Instruments at 47 ....................................26

N. Atl. Instruments, 188 F.3d at 43-44 .......................24

N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir.
1999)..........................................................24

Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp.2d 468 (S.D.N.Y.
2004); 18 U.S.C. § 1030(g)...................................12

Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V., 702
F. Supp. 1005, 1018 (S.D.N.Y. 1988).........................27

Papasan v. Allain, 478 U.S. 265, 286 (1986) ...................6

Reimerdes, 111 F. Supp. 2d at 316 ............................18

Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478 (2007) ........21

Sit-Up Ltd. v. IAC/InterActiveCorp., No. 05-CV-9292, 2008 WL
463884, at *8 (S.D.N.Y. Feb. 20, 2008)......................25

State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc., 909 F.
Supp. 137, 145 (S.D.N.Y. 1995)..............................15

Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir. 1993)..................................................... 25

Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir.2003)............................ 10

Twombly, 550 U.S. at 555 ........................................ 6

Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 316, judgment entered, 111 F. Supp. 2d 346 (S.D.N.Y. 2000)... 18

Walkovszky v. Carlton, 18 N.Y.2d 414, 417, (1966) ............ 27

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991)........................... 28

World Intellectual Property Organization ("WIPO") Treaty ...... 17

**Other Authorities**

17 U.S.C. § 101 .................................................. 9

17 U.S.C. § 1201 ................................................ 15

17 U.S.C. § 1201(a)(3)(B) ....................................... 17

17 U.S.C. § 501, et seq. ......................................... 7

18 U.S.C. § 102 .............................................12, 13

18 U.S.C. § 1030, et seq. ....................................... 10

18 U.S.C. § 2701, et seq. ....................................... 13

**Rules**

FRCP 12(b)(6) .................................................. 1

## PRELIMINARY STATEMENT

Defendants, JCPR, Inc.("JCPR"), Jennifer Connelly Public Relations, Ltd., and Jennifer Connelly, individually ("Connelly"), collectively referred to as ("Defendants") hereby move pursuant to FRCP 12(b)(6) to dismiss Plaintiff's, Institutional Investors, ("II") Amended Complaint in its entirety. Defendants submit that II has failed to state a claim against the Defendants for any of the following:

- Count 1- Direct Copyright Infringement
- Count 2- Violation of the Computer Fraud and Abuse Act
- Count 3- Violation of the Electronic Privacy Act
- Count 4- Violation of Section 1201 of the Digital Millennium Copyright Act
- Count 5- Fraud and Deceit
- Count 6- Misappropriation of Trade Secrets

For the reasons that follow, Defendants move that all Counts in the Amended complaint be dismissed under Rule 12(b)(6), as there is no cause of action stated upon which relief may be granted against these Defendants.

1

## STATEMENT OF FACTS

JCPR is a public relations agency that focuses its business on developing and executing strategic, multichannel communications campaigns for public and private businesses across a broad range of industries with specialized practice groups in Finance, Technology, Commercial Real Estate, Professional Services, Health & Wellness and Innovation & Leadership. (See, Affidavit of Karen Pellicone, ¶¶3-4.)[1] JCPR is not in the financial services industry, although it provides public relations to companies that are in this field. Id., ¶6. JCPR also represents clients in other fields, such as technology, commercial real estate, professional services, and health and wellness. Id., ¶7.

Jennifer Connelly is the founder, CEO and sole shareholder of JCPR. Id., ¶8. JCPR is Domestic Profit Corporation registered in the state of New Jersey, with its headquarters located in Parsippany, New Jersey. Id., ¶ 9.

Plaintiff Institutional Investor, LLC ("II"), upon information and belief, is a subsidiary of Euromoney Institutional Investor PLC. II is a monthly periodical that publishes its content in a hard copy magazine and online format.

---

[1] Court rules governing a motion to dismiss require that the Court consider the facts in the Amended complaint to be true. Defendants submit the accompanying affidavits merely for additional background, and Defendants submit the Court can take judicial notice of the information contained in them.

Upon information and belief, II focuses its content on finance and business. The website is found at http://www.institutionalinvestor.com/. See, print-out of Plaintiff's website, attached to the Affidavit of James T. Prusinowski, ¶3 Ex. 1. Like many other periodicals, such as the New York Times and Forbes, some content on the website is provided for free, while other content is provided through a subscription service. The subscription service is accessed through a login user name and password, and the cost of the service runs from $575 for a "Silver" subscription for one year, to $1680 for a one-year "Platinum" subscription. Id. It also offers discounts for multi-year subscriptions. Id. II also offers a fourteen (14) day "free trial." Id.

In its Amended Complaint, II alleges that Oppenheimer Funds, a third party not named as a litigant in the Amended Complaint, entered into a single user license agreement with II to access its website. See Amended Complaint, ¶16. II states that Kaitlyn Downing was the only authorized user at Oppenheimer. Id. Allegedly, Downing gave the password to a former employee of both JCPR and Oppenheimer named Jeanne Pisarra. Id., ¶16. II then alleges that Pisarra gave the user name and password to Connelly and others at JCPR, and lays out scenarios whereby JCPR employees utilized this password. Id. at ¶16-18. It should be noted that neither Downing nor Pisarra are named as a party in

3

the Amended Complaint. According to the Amended Complaint, JCPR utilized this login and password on multiple occasions and, at times, had several people accessing Plaintiff's website in multiple locations at the same time. Id., ¶¶19-27.

II has alleged that JCPR users have used the password from several locations including Garfield, Rockaway and Denville, New Jersey, Bronx and New York, New York, and Englewood Colorado. Id. at ¶26. However, JCPR is located in Parsippany, New Jersey, which II acknowledges earlier in the Amended Complaint. Id. ¶2. Additionally, the Amended Complaint does not set forth how Plaintiff learned that the alleged IP addresses accessing the website with Ms. Dowling's password are, in fact, JCPR users. Plaintiff has presented no facts that tie JCPR to the alleged password abuse.

Furthermore, even if Plaintiff's allegations of unauthorized password use are true, which Defendants vehemently deny, Plaintiff has made no allegations that JCPR or Connelly have used any of the alleged copyrighted materials in any capacity, let alone for profit, or have reproduced anything. II can point to absolutely no damage that it has incurred. The only fact it can show is that Kaitlyn Downing's password was used to access the website multiple times from different IP addresses, in multiple locations. None of these locations are in Parsippany, where JCPR is located.

Based on the foregoing, Plaintiff's allegations cannot be sustained against JCPR and Jennifer Connelly, and Defendants respectfully request that the entire Amended complaint be dismissed.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief may be granted.

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must satisfy the pleading standards set forth in Rule 8(a), as interpreted by the United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Under Rule 8(a), "all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible," to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 556. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009).

Although factual allegations in the Amended complaint are taken as true, the assumption of truth does not extend to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. A complaint must therefore contain more than "naked assertion[s] devoid of

5

further factual enhancement." Id. (internal citations omitted). Pleadings that contain "no more than conclusions...are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss. Id. at 679.

Plaintiff's pleading requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Papasan v. Allain, 478 U.S. 265, 286 (1986). Factual allegations must be enough to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. Accordingly, Plaintiff cannot satisfy this standard by offering merely "a formulaic recitation of the elements of a cause of action," "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 677 (internal citations omitted). While Twombly does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

Plaintiff fails to meet the foregoing standard with respect to the claims it asserts against the Defendants. Plaintiff's Amended complaint merely contains allegations that a password was used to access its website, but there are no allegations supporting the conclusion that the unauthorized password was used by the Defendants and/or their employees. As the Amended

complaint contains "no more than conclusions," Plaintiff is not "entitled to the assumption of truth" otherwise applicable to complaints. Iqdbal, at 679. Accordingly, all Counts relating to Defendants must be dismissed under Rule 12(b)(6).

## LEGAL ARGUMENTS

### POINT I

#### COUNT ONE OF PLAINTIFF'S AMENDED COMPLAINT FAILS TO ESTABLISH THAT ANY ACTION TAKEN BY THESE DEFENDANTS WAS IN VIOLATION OF THE COPYRIGHT AND COMPUTER FRAUD AND ABUSE ACT

The facts contained in Plaintiff's amended Complaint must be enough to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. at 555, 557. However, Plaintiff has only provided speculation and a recitation of elements to support Count 1. As such, it should be dismissed.

In Count One, Plaintiff alleges an action for direct copyright infringement under 17 U.S.C. § 501, et seq. To withstand a Motion to Dismiss based on copyright infringement, the complaint must allege the following: (1) which original works are the subject of the copyright claim; (2) that the plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) "by what acts during what time" the defendant infringed the copyright. See, Carell v. Shubert Org., Inc., 104 F. Supp.

2d 236, 250 (S.D.N.Y. 2000). Plaintiff's amended complaint fails to allege all of the elements.

While the amended complaint makes the conclusory statement that it "has been irreparably harmed by Defendants' unauthorized reproduction of its copyrighted works," (Amended Complaint, ¶28), nowhere else does II allege Defendant reproduced any of the copyrighted material contained on the website, nor has provided other support for the conclusion.

Plaintiff cannot succeed on a claim of copyright infringement. Plaintiff must prove: (1) ownership of a valid copyright, and (2) **copying constituent elements of the work that are original.** Associated Press v. Meltwater U.S. Holdings, Inc., 12 CIV. 1087 DLC, 2013 WL 1153979 (S.D.N.Y. Mar. 21, 2013)[emphasis added]. Defendants will concede for purposes of this motion that Plaintiff owns a valid copyright. However, there is nothing alleged in the Amended complaint to meet the second prong.

To make a claim under § 501, a plaintiff must show that the defendant "actually copied" his or her work. Gal v. Viacom Int'l, Inc., 518 F. Supp. 2d 526, 536-37 (S.D.N.Y. 2007). The Second Circuit has held, "[t]o demonstrate unauthorized copying, the plaintiff must first show that his work was actually copied; second he must establish substantial similarity or that the copying amounts to an improper or unlawful appropriation, i.e.,

(i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than de minimis." Id., citing, Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir.2003) (internal quotation marks and citation omitted).

Further, "copies," as defined in the Copyright Act, "are material objects...in which a work is fixed by any method...and from which the work can be...reproduced." The Act also provides that a work is "'fixed' in a tangible medium of expression when its embodiment...is sufficiently permanent or stable to permit it to be...reproduced...for a period of more than transitory duration." Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 127 (2d Cir. 2008)(citing, 17 U.S.C. § 101).

Plaintiff does not allege that JCPR reproduced or copied documents that were substantially similar to copyrighted works of II. Again, there are no allegations that JCPR reproduced any documents at all. Rather, Plaintiff merely states that it has been harmed by the elusive "authorized reproduction of its copyrighted works" as "lip service" in Count 1, without any substantive facts to support its conclusion. However, Plaintiff has invented its own definition of "reproduction," by contending that JCPR's alleged unauthorized access to its subscription service somehow constitutes a copyright infringement. This does

not meet the definition of copyright infringement under the statute.

Again, Plaintiff's amended complaint sets out allegations that someone from JCPR used a login and password issued to Oppenheimer to access II proprietary information. At best, the Plaintiff's allegations show Defendants accessed II's website and reviewed or read articles. There is no showing that anything was copied. Most importantly, there is no support for the clam that improperly accessing a website and reviewing its content constitutes copyright infringement.

II has not alleged that anything it holds a copyright in was copied. Rather, II has alleged that JCPR has improperly accessed its website with a password not issued to JPCR. This claim, even if proven, would not substantiate a copyright claim. Therefore, this claim should be dismissed.

### POINT II

#### COUNT TWO MUST BE DISMISSED AS PLAINTIFF LACKS STANDING.

In Count Two, Plaintiff alleges that JCPR violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, et seq. Plaintiff does not have standing to make this claim even if the facts alleged true, as Plaintiff has not suffered a "loss" as contemplated by the statute.

The CFAA is a criminal statute, but it also provides for a civil right of action. Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp.2d 468 (S.D.N.Y. 2004); 18 U.S.C. § 1030(g).

Plaintiff has alleged that the Defendants' acts violated §§1030(a)(2),(5), and (6). Under §1030(a)(2)(C), "[w]hoever...intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains...information from any protected computer if the conduct involved an interstate or foreign communication" may be punished.

Section 1030(5)(A)(i) prohibits knowingly transmitting "a program, information, code, or command" and intentionally causing unauthorized damage, to a protected computer.

Under § 1030(5)(A)(6), the Act prohibits someone from knowingly and with intent to defraud the trafficking of any password or similar information through which a computer may be accessed without authorization, if either such trafficking affects interstate or foreign commerce; or such computer is used by or for the Government of the United States.

Subsection (g) provides for a right for a civil action only if the conduct involves one of its factors. Here, the only applicable section is subsection (g)(I): "loss to 1 or more persons during any 1-year period...aggregating at least $5,000 in value." Section 1030(e)(11) defines "loss" as: "any reasonable cost to any victim, including the cost of responding

to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."

Plaintiff has not alleged any specific loss as defined under the statute. Plaintiff does not plead any physical damage to the computer or a loss of service based upon Defendants' alleged actions, which is a required element to make a claim under this statute. As such, Plaintiff does not have standing because it has not plead any loss over $5,000, as "loss" is defined in the statute to meet the jurisdictional threshold.

Even if, assuming *arguendo*, that Plaintiff does have standing, this Count should still be dismissed because the Amended complaint does not plead the required elements for a claim. Plaintiff merely recites the statutory elements without identifying any factual allegations of Defendants' violations.

Plaintiff does not allege any physical damage to any computer or network. Moreover, there are no facts to suggest Defendants engaged in any activity qualifying as "defraud trafficking" under 18 U.S.C. § 102. The term "traffic" means "transfer, or otherwise dispose of, to another, or obtain control of with intent to transfer or dispose of." Id. There are no facts plead to suggest that Defendants' alleged use of

the password without authorization constitutes "trafficking" as defined by 18 U.S.C. § 102.

Since no such damage has occurred, and Plaintiff lacks standing, Count Two of Plaintiff's Amended complaint should be dismissed.

### POINT III

**PLAINTIFF HAS NOT ESTABLISHED ANY FACTS THAT WOULD SUPPORT A CLAIM OF VIOLATING THE ELECTRONIC PRIVACY ACT**

Plaintiff cannot articulate a cause of action under the Stored Communications Act (SCA), of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2701, et seq. Section 2701 makes it a crime to intentionally access without authorization a facility through which an electronic communication service provided and thereby obtains, alters or prevents authorized access while it is in electronic storage. Section 2707 provides a civil remedy, setting forth that any provider of an electronic communication service, subscriber, or other person aggrieved by any violation of this chapter can recover from that person or entity.

The ECPA was primarily designed to provide a cause of action against computer hackers. State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc., 909 F. Supp. 137, 145 (S.D.N.Y. 1995). The primary purpose of § 2701, et seq., is to prohibit illegal

access to, disclosure, and interception of electronic information. Id. at 144.

Plaintiff has not plead a cause of action under the ECPA, as it has not alleged knowing, intentional or deliberate actions by Defendants. There are no allegations that any JCPR employee is a hacker or intended to alter any electronic communication stored on II's servers.

In Butera & Andrews v. IBM, 456 F. Supp. 2d 104, 110 (D.D.C. 2006), the Court dismissed plaintiff's Complaint under the ECPA because, the fact that the improper access came from IBM's IP addresses alone was insufficient to state a claim. Plaintiff must "plead any intentional conduct" by the defendants and "offer any 'conceivable motive for [defendants] to engage in such conduct.' " Id.

Plaintiff does not allege that Defendants had knowledge of the password, and does not identify who at JCPR utilized the password. Merely stating that it has obtained IP addresses from JCPR is insufficient, especially in light of the varied location of the IP addresses, none of which are in Parsippany, NJ. (See, Amended complaint ¶¶2 and 26.) Further, Plaintiff does not speculate any conceivable motive, nor plead any intentional conduct on behalf of JCPR or Connelly.

Further, "[a]n employer cannot be held liable for its employees' intentional conduct solely on the basis of an employer-employee relationship." Butera, at 112.

Because the Plaintiff has not plead any intentional conduct by the Defendants, Count Three should be dismissed.

### POINT IV

**PLAINTIFF CANNOT MAKE OUT A CLAIM UNDER SECTION 1201 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT**

Count Four of the Amended complaint alleges that the Defendants violated § 1201 the Digital Millennium Copyright Act (DMCA), 17 U.S.C. § 1201. The count fails to plead a cause of action under the complex statute designed to "provide adequate legal protection and effective legal remedies against the circumvention of effective technological measures that are used by authors . . . in respect of their works, which are not authorized by the authors concerned or permitted by law." Art. 11 of the World Intel. Prop. Org. ("WIPO") Treaty; see also, Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 316, judgment entered, 111 F. Supp. 2d 346 (S.D.N.Y. 2000).

The DMCA criminalizes unauthorized techniques to obtain access or dissemination of a copyright without permission. Using a password to gain access to copyrighted material is not the type of "circumvention" that Congress intended to combat in passing the DMCA; Congress sought to punish the conduct of those

people who "will try to profit from the works of others by decoding the encrypted codes protecting copyrighted works, or engaging in the business of providing devices or services to enable others to do so."   H.R.Rep. No. 105-551, pt. 1, at 10 (1998); see also, Reimerdes, 111 F. Supp. 2d at 316.

Section 1201 addresses the circumvention of copyright protection systems.   The statute contains two principal anti-circumvention provisions: § 1201(a)(1), governs "[t]he act of circumventing a technological protection measure put in place by a copyright owner to control access to a copyrighted work," an act described by Congress as "the electronic equivalent of breaking into a locked room in order to obtain a copy of a book."

The second, § 1201(a)(2), is designed to protect the trafficking of that protected material.

A plaintiff alleging a violation of DMCA anti-circumvention provision must prove: (1) ownership of a valid copyright on a work (2) effectively controlled by a technological measure, which has been circumvented (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the

16

controlling technological measure.   Chamberlain Grp., Inc. v. Skylink Technologies, Inc., 381 F.3d 1178 (Fed. Cir. 2004).

Both the anti-circumvention provision and the anti-trafficking subsections of § 1201(a) are aimed at "circumvent[ing] a technological measure" in order to gain unauthorized access to a protected work.   Circumvention requires descrambling, decrypting, avoiding, bypassing, removing, deactivating or impairing a technological measure qua technological measure.   I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc., 307 F.Supp.2d 521, 532-33 (S.D.N.Y. 2004).   "[A] technological measure effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."   17 U.S.C. § 1201(a)(3)(B).

Unauthorized use of a valid password does not violate the DMCA.   See, I.M.S. Inquiry Mgmt. Sys., Ltd, 307 F. Supp. 2d at 532 (holding that bypassing "permission to engage and move through the technological measure from the measure's author" did not fall within the statutory definition of circumvention as the defendant only "used a password intentionally issued by plaintiff to another entity.")

The instant situation is analogous to I.M.S.   As Plaintiff is merely alleging that Defendants have utilized someone else's

password improperly and have made no allegations that they have circumvented the proper channels to access the information, a claim cannot be asserted under the DMCA and Defendants respectfully request this count be dismissed.

## POINT V

**PLAINTIFF DID NOT PLEAD ITS ALLEGATIONS OF FRAUD WITH SPECIFICITY AS REQUIRED BY RULE 9(b).**

To state a claim for common law fraud, a plaintiff must show: (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant intended to deceive plaintiff; (4) **plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss.** Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478 (2007) [Emphasis added].

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b). This is so because defendants must be placed on notice of the precise misconduct with which they are charged. As such, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when

the statements were made, and (4) explain why the statements were fraudulent." Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012).

Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] require allegations of facts that "give rise to a strong inference of fraudulent intent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006).

First, Plaintiff fails to set forth facts to substantiate the elements of fraud, even if there was not a heightened pleading requirement.   Further, since there is a heightened pleading requirement, it should be determined that Plaintiff's claim for fraud shall be dismissed.

Plaintiff has not alleged that it believed and relied upon any statements made by Defendants, or that it was induced to entertain a course of conduct due to Defendants' actions.   II does not state it has incurred a loss by relying upon any of Defendants' statement(s). Therefore, the fraud claim cannot survive.

Even if a liberal reading of the Amended complaint supported the elements, there is a lack of specificity in the claims to show the claim has been pled pursuant to Rule 9(b). Plaintiff simply alleges that "Defendants misrepresented that they were subscribers to the website, when they were not, and

have never been, subscribers to the Website" and that "Defendants knew they were not subscribers to the Website." (Amended complaint, ¶¶50-51).  This is insufficient for a fraud claim, and the claim should be dismissed.

## POINT VI

### COUNT SIX, MISAPPROPRIATION OF TRADE SECRETS, SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

In Count Six, Plaintiff alleges Defendants "misappropriated" II's confidential password.  The Amended complaint states that it licensed the confidential password for a single user only, and the value of the password is in the scarcity and not being readily ascertainable for general use.  (Amended complaint, ¶¶56-57).  This allegation does not establish a claim for misappropriation of trade secrets, and Count Six should be dismissed.

To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 43-44 (2d Cir. 1999)

New York courts define a "trade secret" as "any formula, pattern, device or compilation of information which is used in

one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." N. Atl. Instruments, 188 F.3d at 43-44. A trade secret "is not simply information as to single or ephemeral events in the conduct of the business; rather, it is a process or device for continuous use in the operation of the business." Sit-Up Ltd. v. IAC/InterActiveCorp., No. 05-CV-9292, 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008).

A breach of a duty of trust or confidentiality comprises the core for trade secret misappropriation, and "supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying." Computer Assoc. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 717 (2d Cir. 1992).

Furthermore, following this "extra element" test, it is clear that misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by § 301 of the Copyright Act. Computer Assoc., 982 F.2d at 717 (where a complaint stated that the act of copying the various elements of its computer program constituted both infringement of copyright and misappropriation of trade secrets, the trade secret claim was preempted).

Based on the foregoing, II cannot make out a claim for misappropriation of a trade secret in its Amended complaint.   II

has not set forth what trade secret Defendants utilized as any alleged misuse of a private party's password does not meet the definition of "trade secret."

The core element of a misappropriation of trade secrets claim is a breach of the duty of trust or confidentiality. Plaintiff does not allege any duty owed to them by Defendants, nor does Defendants owe any duty to Plaintiff. There is no agency relationship alleged between the parties. Furthermore, the Courts have contemplated this duty under this statute to arise in an employer-employee context. N. Atl. Instruments, 188 F.3d. at 47.

Based on the foregoing, as Plaintiff has not met the elements for a claim under misappropriation of a trade secret, it is respectfully submitted that Count Six should be dismissed.

## POINT VII

**PLAINTIFF CANNOT ARTICULATE ANY ACTION AGAINST DEFNEDANT JENNIFER CONNELLY AS IT HAS NOT PIERCED THE CORPORATE VEIL.**

JCPR is a New Jersey Corporation, and Jennifer Connelly is its CEO. See, Pellicone Aff., ¶¶8-9. A corporation is an entity that is created by law and endowed with a separate and distinct existence from that of its owner. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between

a corporation and its owners.  Oriental Commercial and Shipping Co., Ltd. v. Rosseel, N.V., 702 F. Supp. 1005, 1018 (S.D.N.Y. 1988).

If it can be shown that a corporation is being used by an individual to accomplish his or her own business, rather than the corporation's business, only then can such a controlling shareholder be held liable for the corporation's commercial dealings or its negligent acts.  See, Walkovszky v. Carlton, 18 N.Y.2d 414, 417, (1966).  The critical question is whether the corporation is a "shell" being used by the individual shareowners to advance their own "purely personal rather than corporate ends." Wm. Passalacqua Bldrs, Inc. v. Resnick Dev. S., Inc., 933 F.2d 131, 138 (2d Cir. 1991).

Plaintiff has not alleged that Ms. Connelly is utilizing JCPR as a "shell" for her personal use.  As such, Defendants move to dismiss all claims against individual defendant Jennifer Connelly because the Amended complaint fails to identify actionable conduct committed by her.

Further, copyright infringement claims require that the pleader state "by what acts and during what time the [defendants] infringed the copyright." Id.  While Corporate officers can be held vicariously liable for copyright infringement, the Plaintiff must allege that they had:  (i) the right and ability to supervise the infringing activity; and (ii)

23

an obvious and direct financial interest in exploitation of copyrighted materials. Id. Further, the Southern District of New York has stated that a pleading must contain details of the infringement. Id. at 271.

There are no specific acts alleged against Ms. Connelly, and nothing indicates that Connelly had any knowledge of the password or its usage. The Plaintiff alleges the unauthorized acts were performed by "JCPR" and "JCPR employees." See, Amended complaint, ¶¶ 16-24. None of the acts alleged are specified to have been performed by Ms. Connelly.

Accordingly, each and every count against Connelly must be dismissed.

## CONCLUSION

Based on the foregoing, Defendants respectfully submit that Plaintiff has failed to establish any facts that allow this case to proceed. The Plaintiff has not even provided a formulaic recitation of the elements of the various causes of action and all claims asserted against them in the Amended complaint must be dismissed in their entirety and with prejudice.

Respectfully Submitted,
**TRIMBOLI AND PRUSINOWSKI, LLC**
Attorneys for Defendants JCPR and
Jennifer Connelly

_____
James T. Prusinowski

Date: 11/26/13

24

 **Shipment Receipt**

**Transaction Date:** 26 Nov 2013          **Tracking Number:**          1Z1043021394005033

---

**1  Address Information**

| Ship To: | Ship From: | Return Address: |
|---|---|---|
| Daniel Patrick Moynihan US Courthou | Knapp, Trimboli & Prusinowski, | Trimboli & Prusinowski, LLC |
| Honorable William H. Pauley, III | Carol R. Jardines | Carol Jardines |
| 500 Pearl Street | 268 SOUTH ST | 268 South Street |
| Court 20B | MORRISTOWN NJ 07960 | MORRISTOWN NJ 07960 |
| NEW YORK NY 100071316 | Telephone:973.660.1095 | Telephone:973.660.1095 |
| Telephone:(212) 805-6387 | x12 | x12 |

---

**2  Package Information**

| | Weight | Dimensions / Packaging | Declared Value | Reference Numbers |
|---|---|---|---|---|
| 1. | Letter | UPS Letter | | Reference#1 - 13-114 II v. JCPR |
| | | | | Reference#2 - |

---

**3  UPS Shipping Service and Shipping Options**

Service:                                UPS Next Day Air Saver
Guaranteed By:                          3:00 PM Wednesday, Nov 27, 2013
**Shipping Fees Subtotal:**                **19.06 USD**
     Transportation                        17.25 USD
     Fuel Surcharge                         1.81 USD

**Additional Shipping Options**
Quantum View Notify E-mail Notifications:                    No Charge
     1 cjardines@ktplawyers.com:   Delivery

---

**4  Payment Information**

Bill Shipping Charges to:                    Shipper's Account 104302

**A discount has been applied to the Daily rates for this shipment**

**Total Charged:**                                                    19.06 USD
**Negotiated Total:**                                                 16.39 USD

---

**Note: Your invoice may vary from the displayed reference rates.**
* For delivery and guarantee information, see the UPS Service Guide. To speak to a customer service representative, call 1-800-PICK-UPS for domestic services and 1-800-782-7892 for international services.
**Responsibility for Loss or Damage**
UPS's liability for loss or damage to each domestic package or international shipment is limited to $100. Unless a greater value is recorded in the declared value field of the UPS shipping system used, the shipper agrees that the released value of each package covered by this receipt is no greater than $100, which is a reasonable value under the circumstances surrounding the transportation. To increase UPS's limit of liability for loss or damage above $100, the shipper must declare a higher value and pay an additional charge. See the UPS Tariff/Terms and Conditions of Service at www.ups.com for UPS's liability limits, maximum declared values, and other terms of service. UPS does not accept for transportation and shippers are prohibited from shipping packages with a value of more than $50,000. Claims not made within nine months after delivery of the package (sixty days for international shipments), or in the case of failure to make delivery, nine months after a reasonable time for delivery has elapsed (sixty days for international shipments), shall be deemed waived. The entry of a C.O.D. amount is not a declaration of value for carriage purposes. All checks or other negotiable instruments tendered in payment of C.O.D. will be accepted by UPS at shipper's risk. UPS shall not be liable for any special, incidental, or consequential damages. All shipments are subject to the terms and conditions contained in the UPS Tariff/Terms and Conditions of Service (available at www.ups.com).